WATSON ET UX. *v.* DORSEY

[No. 338, September Term, 1971.]

*Decided May 16, 1972.*

510

*Motion for rehearing filed June 15, 1972; denied June 28, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Robert W. King,* with whom was *Graydon S. McKee, III,* on the brief, for appellants.

No brief filed on behalf of appellee.

HAMMOND, C. J., delivered the opinion of the Court.

On December 16, 1970 the appellants, Ralph Watson and Mary Rose Watson, his wife, sued Walter B. Dorsey, a member of the Bar of Maryland with offices in St. Mary's County, in a case that became Law No. 4884, for damages they suffered as a result of his alleged professional incompetence. It appears that at a trustee's sale in 1962 the Watsons purchased one parcel of land and one Raley et ux., purchased another. The key allegation in the declaration was that Mr. Dorsey was employed to represent the Watsons in an ejectment suit [*Raley v. Watson,* Law No. 3536] filed against them by the Raleys in the Circuit Court for St. Mary's County and "in violation of his duty neglected to call certain

witnesses and to produce certain evidence at the trial of the aforesaid action [on March 15, 1967], the names of said witnesses and the nature of their testimony having been communicated [by the Watsons to Dorsey], the failure of which resulted in a judgment against [the Watsons], all of which resulted in [the Watsons] suffering a loss of property" valued at $3,500.

It further appeared that the judgment of ejectment in favor of the Raleys was appealed to this Court and that in *Watson v. Raley,* 250 Md. 266, submitted on brief by both sides (Dorsey being attorney for the Watsons), the judgment was affirmed on June 3, 1968.

Dorsey pleaded the statute of limitations, that he did not commit the wrong alleged and a special plea outlining the reasons the witnesses suggested by the Watsons, particularly the trustee at the sale in 1962, were not called. Thereafter the Watsons filed in case Law No. 4884 a "Petition for Declaratory Judgment," asking a declaration "as to whether or not the claim herein is barred by the statute of limitations." A hearing was set and had on the petition, the Watsons' point of view being argued by their lawyer and 'Mr. Dorsey's point of view being presented in proper person. Judge Loveless decided that limitations began to run on March 15, 1967, the day the trial court gave judgment for the Raleys against the Watsons, and since suit on the malpractice claim was not filed until December 16, 1970, more than three years later, the action was barred by the statute of limitations. This appeal followed.

It should be noted that the road travelled to obtain a ruling on the point of limitations is unusual, to say the least. Maryland Rule 502 a provides for a separate trial of an issue at law "at any stage of the action" and what was done here was contemplated to be done—and could and should have been done—under Rule 502 a. Nevertheless the declaratory judgment route was followed with the approval of both sides and the court, and it led to the identical terminus that would have been reached if Rule

502 a had been availed of; and we shall, decide the case in the posture in which it reached us.[1] The judgment appealed from put the plaintiffs out of court and thus was immediately appealable. *Cambridge v. Eastern Shore etc., Co.,* 194 Md. 653, 655-656; *Buckler v. Safe Deposit and Trust Co.,* 115 Md. 222.

Code (1957, 1972 Repl. Vol.), Art. 57, § 1, provides in pertinent part that actions based on negligence shall be commenced or sued on "within three years from the time the cause of action accrued." Generally, limitations against a right or cause of action begins to run from the date of the wrong and not from the time the wrong is discovered. But in Maryland in cases of professional malpractice the cases have established the "discovery rule" —the rule that the cause of action accrues when the claimant discovers or reasonably should have discovered that he has been wronged. This Court has not, however, been willing to extend the period of limitations to the extent the so-called "maturation of harm" rule would extend it. See *Leonhart v. Atkinson,* 265 Md. 219, 289 A. 2d 1 (1972), in which the background of the discovery rule and the cases which have applied it to various professional malpractice actions are discussed.

In the case before us the Watsons say that their right of action accrued when the Court of Appeals affirmed the Raley ejectment judgment against them on June 3, 1968, and that their suit against Dorsey was filed within three years of that date, on December 16, 1970. In our view, Judge Loveless was correct in holding that the Watsons'

---

1. "As a general rule, the courts will not entertain a declaratory judgment action if there is pending, at the time of commencement of the action for declaratory relief, another action or proceeding to which the same persons are parties and in which may be adjudicated the same issues involved in the declaratory action, even if such other action is pending in another forum." 22 Am. Jur. 2d Declaratory Judgments § 16. See also Grimm v. Co. Comm'rs of Wash. Co., 252 Md. 626. But the rule is not immutable as parts of § 16 other than that quoted above indicate. Compare Schultz v. Kaplan, 189 Md. 402, and Sears, Roebuck and Co. v. American Mut. Liab. Ins. Co., 372 F. 2d 435 (7th Cir.).

cause of action accrued when they lost the ejectment case in the trial court on March 15, 1967. It is clear to us that the nature of the Watsons' complaint against Dorsey makes it plain that they must be charged with knowledge that they had been wronged as soon as the ejectment case was decided against them. They felt that certain witnesses could testify as to certain things (which they enumerated to the lawyer) that would be favorable to their cause. Their lawyer did not call those witnesses and they lost their case.

The connection between the failure to produce their witnesses and the loss of the case could not have failed to come into their consciousness immediately. Whether in fact there was a connection would seem to be at least open to doubt; but they must at once have thought that the failure to produce the testimony they told the lawyer was so important was a cause, and the loss of the case an effect. Yet they did not sue their lawyer until 45 months had passed, and the law required them to sue within 36 months.

The Watsons urge upon us that Dorsey continued to be their lawyer until after the ejectment case was affirmed by the Court of Appeals on June 3, 1968, that there was a relationship of trust and confidence between clients and lawyer and that it is unreasonable in this situation to say that the clients should sue the lawyer until the last available court has spoken. We agree that conceivably there may be situations of client and lawyer relationship where the client did not discover or could not reasonably have discovered during the continuation of the relationship that he had been wronged, but this case is not one of them. The basic test of the discovery rule consistently is the "knew or should have known" test and the Watsons certainly should have realized the simple and obvious connection (if connection in fact there was) between the absent witnesses and the loss of the case.

There is no claim of fraud by the Watsons so that

Code (1957, 1972 Repl. Vol.), Art. 57, § 14, which tolls the statute when one is kept in ignorance of his cause of action by his oppressor's fraud, is not applicable. In effect the Watsons' claim is that Dorsey should be estopped to claim that their cause of action accrued before June 3, 1968 when the Court of Appeals ruled, because he continued as their lawyer until that time. In *Leonhart,* referred to earlier, there was a similar and analogous argument as to an accountant, on a claim that a cause of action did not accrue until the Circuit Court of Appeals affirmed the Tax Court, both determinations being contrary to accounting and tax advice the accountant had given. We rejected the argument, saying that the claimants' attempt was to raise a Section 14 defense (fraud) to limitations under the guise of estoppel and waiver by claiming reliance on the accountant's assurances that his advice had been correct; that claimants had not shown that the accountant had been guilty of "any unconscionable, inequitable or fraudulent act of commission or omission upon which [claimants] relied * * *" (*Jordan v. Morgan, Adm'x,* 252 Md. 122, 132) ; that all claimants had shown was that the accountant continuously maintained his position and recommended actions in court to defeat the assessment made by the Internal Revenue agents; that there was no claim that the accountant ever asked that he not be sued or induced forbearance to sue, or stated that he would waive limitations. The only conclusion to be drawn, we said in *Leonhart,* "is that the delay in filing suit was due to the lack of diligence on the part of the [claimants]." So it is here.

*Judgment affirmed, with costs.*