511 A.2d 40

**Samuel B. HAYNIE, Jr.**

v.

**GOLD BOND BUILDING PRODUCTS.**

**No. 26, Sept. Term, 1985.**

Court of Appeals of Maryland.

July 11, 1986.

Thomas J. Kwiatkowski, Jr. (Marvin Ellin, Ellin & Baker, on brief), Baltimore, for appellant.

Dale B. Garbutt and Anne Talbot Hardy (Whiteford, Taylor, Preston, Trimble & Johnston, on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

ELDRIDGE, Judge.

This case began when the plaintiff, Samuel B. Haynie, Jr., filed in the Circuit Court for Baltimore City a "Bill For Declaratory Judgment." Named as defendant was Haynie's employer, Gold Bond Building Products. The pertinent factual allegations and issues raised were set forth in the Bill as follows.

"The Plaintiff alleges that in March, 1978, a defective piece of machinery at the production plant owned by the Defendant malfunctioned electrically igniting flammable fuel oil. The machinery was labeled a 'rock dryer,' a machine which flame dries gypsum rock to prepare it for processing in the Defendant's plant.

"The manufacturer of the machine had recognized its potential for serious harm and had installed an automatic safety device which would shut down the flow of fuel oil in the event the electrical ignition system short circuited. This automatic cutoff would thereby prevent the occurrence of an extremely hazardous and life-threatening phenomenon known as 'reverse ignition' in which fuel oil splashes against the hot metal of the rock dryer igniting flames back into the area of the workmen. On several previous occasions, known only to the Defendant Corporation and its managerial personnel, the rock dryer ignition system had malfunctioned and the automatic safety device had immediately shut down the machine.

"The Defendant Corporation recognized the potential danger of the rock dryer, but deliberately chose to disregard the risk of injury posed to its employees.

"At sometime prior to March 18, 1978, the managerial personnel of the Defendant Corporation rigged a bypass of the rock dryer's automatic safety device, telling no one about this attempt to maintain continuous operation of the assembly line system. The bypass of the rock dryer's

safety device was carried out by the Corporate Defendant so as to prevent the machine from shutting off, thereby reducing the 'down time' for the production assembly line.

"Only hours after the bypass was put in place the electrical ignition system short circuited. This time, however, the rock dryer did not shut down and the continuous flow of fuel oil produced reverse ignition. The flammable fuel struck the super heated inner walls of the rock dryer and searing flames shot out from the mouth of the machine.

"Foreseeably and predictably employees of the Defendant Corporation attempted to extinguish the fire with a fire extinguisher. In so doing, the Plaintiff, Samuel B. Haynie, Jr., was electrocuted when his metal fire extinguisher came in contact with the electrical system of the rock dryer. The Plaintiff survived, but suffered *inter alia* third degree internal burns which required extensive hospital, medical and surgical care and which have rendered him permanently disabled.

"The Plaintiff asserts that the rule of law controlling this case is that articulated by the Court of Appeals of West Virginia in the case of *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978), ... which held that proof of outrageous misconduct by an employer plus proof of a strong probability that serious injury would result therefrom, constituted 'a deliberate intention to produce such injury,' under a section of West Virginia's Workmen's Compensation Statute which is nearly identical to Section 44 of the Maryland Workmen's Compensation Act.... The Defendant disagrees arguing that, even if the Maryland Court of Appeals were to adopt the West Virginia rule, Mr. Haynie has made an election of his remedies when he chose to first proceed under the Workmen's Compensation Statute and collect benefits therefrom. [see, Md.Code (1957, 1979 Rep.Vol., 1982 Cum.Supp.) Art. 101, § 58 ...].

"It is alleged that, although Mr. Haynie did first file a claim and receive benefits under the Maryland Workmen's Compensation Act, such was done without full knowledge

of his rights and remedies at common law. It is further asserted that without such necessary information, it is impossible for any party to make an *informed* election of remedies. There are no Maryland Court of Appeals cases which have addressed this issue directly.

"Finally, the Defendant alleges that the Plaintiff may not elect to pursue any law action against Gold Bond Building, Inc., since it was not his 'employer' for purposes of this incident as the term 'employer' is defined under the Workmen's Compensation Act. That is to say, the Defendant argues that because the individuals allegedly responsible for any malfunction of the rock dryer were not the 'alter ego' of the Corporation, Mr. Haynie has failed to satisfy this threshold requirement for an election of any kind. The Plaintiff strenuously disputes this contention.

"WHEREFORE, the Plaintiff prays that this Court by judgment declare:

"That the rule of law to be utilized in defining the term, 'deliberate intention,' in Section 44 of the Maryland Workmen's Compensation Act is that rule announced by the West Virginia Court in the case of *Mandolidis v. Elkins Industries, Inc.* . . . .

"That the Plaintiff's initial decision to file and accept Workmen's Compensation benefits does not constitute a binding election of remedies under § 58 of the Workmen's Compensation Act if such a decision was made without full knowledge of his alternatives.

"That the Plaintiff's injuries were the result of acts taken with deliberate intention by the Plaintiff's 'employer,' as that term is defined under the Workmen's Compensation Act."

In its answer to the Bill, the defendant Gold Bond Building Products "admit[ted] that the plaintiff was injured in March 1978 while an employee of ... Gold Bond Building Products, and while performing job duties arising out of and in the course of employment." Gold Bond asked the court to declare that the controlling rule of law "is that of

the vast majority of states which have considered this matter which is that 'a deliberate intention to produce such injury' can only be found from a recognized intentional tort and not from negligence however gross." Gold Bond also asked the court to declare that "Mr. Haynie's decision to file and accept Workmen's Compensation benefits constitutes an election of remedies or waiver or estoppel or res judicata as to any right by Mr. Haynie to proceed against his employer at common law." Finally, Gold Bond requested the court to declare that Haynie's "injuries were not the result of any actions by his 'employer' as that term is used in Section 44 of Article 101."

Thereafter the circuit court filed an opinion and a declaratory judgment. The circuit court declined to follow the rule announced by the West Virginia court in the *Mandolidis* case, choosing instead to adopt the rule followed in other jurisdictions. The court also declared that "the plaintiff's initial decision to file and accept Workmen's Compensation benefits *does* constitute a binding election of remedies under ... the Workmen's Compensation Act" and that "the plaintiff's injuries were *not* the result of acts taken with deliberate intention by the plaintiff's 'employer,' as that term is defined under the Workmen's Compensation Act."

The plaintiff Haynie appealed to the Court of Special Appeals, and the appellate court affirmed in an unreported opinion.[1]

Haynie then filed in this Court a petition for a writ of certiorari, presenting the legal issues forming the subject of the declaratory judgment. The petition also referred to the fact that "a claim of common law in tort" had been filed by Haynie against Gold Bond prior to the filing of the declaratory judgment action, that in the common law action Gold Bond had relied on the "employer-immunizing provisions of the Workmen's Compensation Act," that Gold Bond had

---

1. Related litigation was reported in *Haynie v. National Gypsum Corp.,* 62 Md.App. 528, 490 A.2d 724 (1985).

filed three motions for summary judgment in that action, that the declaratory judgment action was filed "to bring about a final ruling on . . . the existence of a cause of action at common law," that the two actions had been "consolidated," and that the circuit court had ruled that "there was no common law cause of action." The inference from the petition for a writ of certiorari was that the common law action and the declaratory judgment action had both been resolved by final judgments. Gold Bond's opposition to the certiorari petition simply referred to the circuit court having "fully and definitely disposed of petitioner's common-law suit. . . ." We granted the petition for a writ of certiorari in order to decide the important questions presented concerning the Workmen's Compensation Act.[2]

At oral argument before us, however, counsel for each side informed us that the tort suit is still pending in the trial court. The record, sent to us pursuant to the writ of certiorari, disclosed that the tort action was filed prior to the declaratory judgment action, in what was then the Baltimore City Court (now part of the Circuit Court for Baltimore City). There was a demurrer by Gold Bond, then an amended declaration, and thereafter three successive motions for summary judgment by Gold Bond. The first motion was withdrawn, and the second was denied. The third motion for summary judgment in the tort suit is still pending. The allegations and the issues raised in the amended tort declaration and third motion for summary judgment are identical to those in the later declaratory judgment action. The same defenses were asserted by Gold Bond in both actions. Nevertheless, the trial court judgment was limited to the declaratory judgment action.

The Declaratory Judgment Act, as amended by Ch. 724 of the Acts of 1945, provided that a party is not barred from

---

**2.** When we granted the petition, we did not have before us any of the circuit court record. The only attachment to the petition was the opinion of the Court of Special Appeals, and the only attachment to Gold Bond's opposition was a portion of the West Virginia Code.

obtaining a declaratory judgment merely because the controversy "is susceptible of relief through a general common law remedy...." [3] But the Act does not provide that, once the common law remedy is actually invoked to provide relief in the controversy, and the common law action is still pending, the parties may also institute a second lawsuit and obtain a declaratory judgment to resolve the same matter. Our cases have repeatedly held to the contrary.

Recently in *Aetna Cas. & Sur. Co. v. Kuhl,* 296 Md. 446, 449 n. 1, 463 A.2d 822 (1983), Judge Cole noted for the Court that a declaratory judgment action "is inappropriate where the same issue is pending in another proceeding.... Here, declaratory judgment was improper because the issue sought to be resolved could have been determined in the pending tort action."

In *Brohawn v. Transamerica Insurance Company,* 276 Md. 396, 406, 347 A.2d 842 (1975), after reviewing prior case law and E. Borchard, *Declaratory Judgments* (2d Ed.1941), we held that "where, as here, the question to be resolved in the declaratory judgment action will be decided in pending actions, it is inappropriate to grant a declaratory judgment." We went on to point out that under the circumstances of that case, "granting a declaratory judgment would constitute an abuse of discretion." 276 Md. at 406, 347 A.2d 842.

*Grimm v. Co. Comm'rs of Wash. Co.,* 252 Md. 626, 250 A.2d 866 (1969), involved a declaratory judgment action brought to resolve issues which were also presented for resolution in a pending criminal prosecution. The plaintiff in the declaratory judgment action was the defendant in the criminal prosecution. In holding that the declaratory judgment action was properly dismissed, Judge Barnes for the Court reviewed cases in other jurisdictions and stated that

---

**3.** The substance of the 1945 amendment is set forth in Code (1974, 1984 Repl.Vol.), § 3–409 of the Courts and Judicial Proceedings Article. For a history of this prov⁻ion, *see Grimm v. Co. Comm'rs of Wash. Co.,* 252 Md. 626, 631–632, 250 A.2d 866 (1969).

"in our opinion the better considered cases hold that once a criminal proceeding has been instituted in which the question of constitutionality of the statute or ordinance can be adequately decided, the courts properly exercise their discretion in declining to grant declaratory relief," 252 Md. at 633–634, 250 A.2d 866. After reviewing numerous cases, the Court in *Grimm* went on (*id.* at 637, 250 A.2d 866):

"It will be noted ... that Professor Borchard in his *Declaratory Judgments* 2d Ed., stated at p. 350:

'Where an action or proceeding is already pending in another forum involving the same issues, it is manifestly unwise and unnecessary to permit a new petition for a declaration to be initiated by the defendant or the plaintiff in that suit.'

and also

'[T]he court will refuse a declaration where another court has jurisdiction of the issue, where a proceeding involving identical issues is already pending in another tribunal, where a special statutory remedy has been provided, or where another remedy will be more effective or appropriate under the circumstances. In these cases it is neither useful nor proper to issue the declaration. In some of these cases, * * * the declaration is refused on jurisdictional grounds. In others, the refusal is justified on discretionary grounds.' (Borchard, *Declaratory Judgments,* Ch. V *Discretion* at p. 302 (2d Ed.1941.))"

The *Grimm* opinion concluded that a policy, permitting declaratory judgment actions to resolve issues which could properly be raised and decided in pending cases, would be unfortunate as it would unduly burden the courts. *Id.* at 640–641, 250 A.2d 866.

The matter was also reviewed in detail by Judge Digges for the Court in *A.S. Abell Company v. Sweeney,* 274 Md. 715, 337 A.2d 77 (1975), where the Court held that a party to a pending District Court action "is not entitled to ... a declaration" in a circuit court declaratory judgment action for the purpose of resolving an issue presented in the

District Court case. 274 Md. at 719, 337 A.2d 77. We quoted at length from *Grimm,* and held that the principles there set forth were applicable regardless of whether the pending case was a civil or criminal action. *Id.* at 719–720, 337 A.2d 77. *See,* in addition, *St. Paul Fire & Mar. Ins. v. Pryseski,* 292 Md. 187, 196, 438 A.2d 282 (1981) (holding, *inter alia,* that the "scope of employment" issue was to be determined in a pending tort suit and not in a declaratory judgment action); *Truck Ins. Exch. v. Marks Rentals,* 288 Md. 428, 430 n. 1, 418 A.2d 1187 (1980) (whether an employee was acting in the scope of employment is an issue "which must be resolved in the [pending] tort suit" and not in a declaratory judgment action); *Watson v. Dorsey,* 265 Md. 509, 512 n. 1, 290 A.2d 530 (1972) (" 'As a general rule, the courts will not entertain a declaratory judgment action if there is pending ... another action or proceeding to which the same persons are parties and in which may be adjudicated the same issues involved in the declaratory action,' " quoting 22 Am.Jur.2d Declaratory Judgments § 16).

■ The rule precluding a declaratory judgment to resolve an issue when there is pending another action in which the same issue can properly be resolved, is neither jurisdictional nor absolute. *See Aetna Cas. & Sur. Co. v. Kuhl, supra,* 296 Md. at 449 n. 1, 463 A.2d 822; *Watson v. Dorsey, supra,* 265 Md. at 512 n. 1, 290 A.2d 530; *Grimm v. Co. Comm'rs of Wash. Co., supra,* 252 Md. at 638–639, 250 A.2d 866. A declaratory judgment may be rendered to decide an issue, even though the issue is presented in another pending case between the parties, in "very unusual and compelling circumstances." *A.S. Abell Company v. Sweeney, supra,* 274 Md. at 721, 337 A.2d 77. In the case at bar, however, there were no very unusual and compelling circumstances justifying the declaratory judgment. The circuit court could have simply decided the pending motion for summary judgment in the tort case.

■ At times in the past, and under the circumstances presented in particular cases, when a declaratory judgment

has been rendered to resolve an issue that could have been decided in a pending common law action, we have noted that the declaratory judgment was improper but have, nonetheless, gone on to decide the merits of the issue. *See, e.g., Aetna Cas. & Sur. Co. v. Kuhl, supra,* 296 Md. at 449 n. 1, 463 A.2d 822. Our repeated admonitions, however, have evidently failed to stop the improper procedure.

Moreover, under circumstances like those in the present case, overlooking the inappropriate procedure might result in litigants misusing the declaratory judgment statute in order to circumvent the policy against appeals from interlocutory orders and against piecemeal appeals. For example, a defendant in a tort case might have several legal defenses in addition to the contention that he committed no wrongful act. The parties might desire to have a trial of only one such legal defense, instead of incurring the expense and time of trying the entire case, on the ground that a ruling favorable to the defendant would be dispositive of the case. Rule 2–502, permitting the trial of a single question, was designed for such situation. A "problem" with the Rule 2–502 procedure, from the limited viewpoint of the parties in a particular case, might be that a ruling in the 2–502 proceeding unfavorable to the defendant could not, under the language of the rule, be appealed until "after entry of an appealable order or judgment." Consequently, unless the 2–502 decision disposes of an entire "claim" and is certified as a final judgment in accordance with Rule 2–602, it could not be immediately appealed. *See, Harford Sands, Inc. v. Levitt & Sons,* 27 Md.App. 702, 707, 343 A.2d 544, *cert. denied,* 276 Md. 744 (1975). In order to evade the final judgment requirement, the parties, instead of invoking the authorized procedure set forth in Rule 2–502, might make the question of law the subject of a separate declaratory judgment action. *Cf., East v. Gilchrist,* 293 Md. 453, 445 A.2d 343 (1982).

Conceivably, in the hypothetical case we are discussing, each separate disputed issue in the tort case could be made the subject of a separate declaratory judgment action. If

this Court were to overlook the improper use of the declaratory judgment statute as long as no party to the litigation challenged the procedure, we would be allowing the parties, by consent, to bypass the final judgment requirement.

For the above reasons, therefore, we shall decline to decide the questions presented in the petition for a writ of certiorari.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH DIRECTIONS TO DISMISS THE DECLARATORY JUDGMENT ACTION. COSTS TO BE EVENLY DIVIDED.