32 A.3d 496

**Jose D. VARGAS–AGUILA**

v.

**STATE of Maryland, OFFICE OF the
CHIEF MEDICAL EXAMINER.**

**No. 1638, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

Dec. 2, 2011.

376

John P. Kudel (Kudel, McGann & DelPino, LLC, Mark W. Oakley, Oakley & Eckstein, LLC, on the brief), Rockville, MD, for Appellant.

C. Frederick Ryland (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellee.

Panel: MEREDITH, ZARNOCH, RAYMOND G. THIEME, JR., (Retired, Specially Assigned), JJ.

ZARNOCH, J.

After obtaining a stay in the District Court for Montgomery County of his trial for certain drunk driving offenses, appellant/cross-appellee Jose D. Vargas–Aguila ("Vargas–Aguila") in October 2009 brought a declaratory judgment action in the Circuit Court for Montgomery County against appellee/cross appellant, State of Maryland, Office of the Chief Medical Examiner ("the State"). Specifically, he sought a declaration that the "Regulations of the Toxicologist, Post Mortem Examiners Commission, State of Maryland, Regarding Tests of Breath and Blood for Alcohol" ("toxicologist standards")[1] were invalid because they had not been adopted in accordance with the rulemaking requirements of the State Administrative Procedure Act (APA), Md.Code (1984, 2009 Repl.Vol.) State Government Article (SG), §§ 10–101 *et seq.*

On appeal, Vargas–Aguila challenges the correctness of the circuit court's declaration that the toxicologist standards were not required to be promulgated under the APA. On cross-appeal, the State argues that the circuit court lacked jurisdiction to issue a declaratory judgment in light of the pending criminal trial in the district court. We agree with the State

---

1. Rather than prejudge an issue we do not reach, we will refer to this document as "toxicologist standards" rather than "regulations." *See* 68 *Opinions of the Attorney General* 9, 12 (1983) (Calling something a rule does not make it one). (Quotations and citations omitted).

and, accordingly, reverse the judgment of the circuit court and remand with directions to dismiss the declaratory judgment action.

## FACTS AND LEGAL PROCEEDINGS

On April 10, 2008, Vargas–Aguila was stopped by the Montgomery County Police while operating a motor vehicle. Based on the odor of alcohol on Vargas–Aguila's breath and the presence of an open beer bottle in the front center console of his vehicle, Vargas–Aguila was arrested on suspicion of driving under the influence of alcohol. Upon his arrival at the police station, Vargas–Aguila took a breath test to determine his blood-alcohol content ("BAC"). According to appellant's brief, the test determined that Vargas–Aguila had a BAC of 0.30 grams of alcohol per 210 liters of breath, above the legal limit to drive.[2] Vargas–Aguila was charged with numerous traffic offenses, including driving under the influence of alcohol, a violation of Md.Code (1977, 2009 Repl.Vol.), Transportation Article §§ 21–902(a)–(b).

Trial of Vargas–Aguila's charges began on May 5, 2009 in the district court. When the State introduced the results of Vargas–Aguila's breath test from the evening of his arrest, Vargas–Aguila objected to the test's admission, citing Md. Code (1973, 2006 Repl.Vol.), Courts and Judicial Proceedings Article ("CJP") § 10–304. Under this provision, when a breath test is used by the police as evidence in a prosecution for driving under the influence of alcohol or while intoxicated, "[t]he test of breath shall be administered by a qualified person with equipment approved by the toxicologist under the Postmortem Examiners Commission at the direction of a police officer."[3] Vargas–Aguila alleged that the equipment

---

**2.** The record does not confirm the rather unlikely fact that 0.30 was Vargas–Aguila's BAC reading at the police station. However, the accuracy of this number is not relevant to the appeal.

**3.** The State toxicologist is an employee. Md.Code (1982, 2009 Repl. Vol.), Health–General Article (HG) § 5–305(a)(1), provides that the Postmortem Examiners Commission "may employ a staff in accordance

used to calculate BAC was not properly administered by a qualified person as required by § 10–304 because the State toxicologist, who is responsible for setting standards for alcohol readings, had not validly adopted them. Specifically, Vargas–Aguila claimed that the toxicologist standards, which were apparently first issued April 1, 1983, *see Krauss v. State,* 322 Md. 376, 381, 587 A.2d 1102 (1991), constituted a "regulation" under the APA.[4] Because these toxicologist standards were not promulgated in accordance with the APA, Vargas–Aguila claimed they were invalid and therefore inadmissible in his criminal case.[5]

In response to Vargas–Aguila's objection to the admission of his breath test results, the district court judge did not make a legal ruling on the validity of the toxicologist standards, but rather, stayed the criminal case and allowed Vargas–Aguila to

---

with the State budget for the operation of the Commission and to maintain accreditation." Under § 5–305(a)(2)(iv), the staff shall include: "1 chief State toxicologist, 1 deputy chief State toxicologist, lead toxicologists, and assistant toxicologists." The law does not capitalize the title "toxicologist."

4. Since 1962, the State toxicologist has been responsible for approving the equipment used to test blood and breath for alcohol in the enforcement of motor vehicle laws. 1962 Md. Laws, ch. 81 ("Any such person may be given a chemical test of his breath ... and that test is administered by qualified personnel with equipment approved by the toxicologist of the office of the chief medical examiner."). In 1983, the State toxicologist reduced these standards to writing. They include training requirements, protocols for calibration of relevant equipment, guidelines for handling test results used at trial, and other technical and scientific standards concerning blood and breath testing. In *Borbon v. MVA,* 345 Md. 267, 275, 691 A.2d 1328 (1997), the Court of Appeals invalidated certain portions of the "regulations," noting that they exceeded the authority of the toxicologist. At the same time, the Court noted that no objection had been raised that the provisions were not adopted under the APA. *Id.* at 274, 691 A.2d 1328.

5. After this issue was raised in this case, the Postmortem Examiners Commission, acting through the Secretary of Health and Mental Hygiene, adopted the toxicology standards, in accordance with the APA. These regulations took effect October 4, 2010. *See* COMAR 10.35.02.02 through 10.35.02.09. The State does not contend that the newly-adopted regulations moot the controversy in this case.

file a declaratory action in circuit court.[6] On October 13, 2009, Vargas–Aguila filed a complaint seeking declaratory relief in the circuit court. His complaint asked that the circuit court declare the toxicologist's standards invalid and award him "such other and further relief as in law and justice he may be entitled to receive."[7] The State moved to dismiss the declaratory judgment action on the grounds that it sought an improper exercise of the circuit court's jurisdiction and intruded on the pending criminal trial in the district court. The court denied the objection.[8] Following a hearing on the merits, the circuit court denied the State's request that it reconsider the rejection of the motion to dismiss and issued the following declaratory judgment:

> DECLARED, that in Md.Code Ann. Courts & Judicial Proceedings Art., §§ 10–302 through 10–309, and in Md. Code Ann. Transportation Art., § 21–902, the Maryland General Assembly has, since 1962, granted the State [t]oxicologist express authority to exercise professional judgment in the certification and approval of equipment used for

---

**6.** The record is unclear as to whether the State's Attorney opposed the stay request.

**7.** In this Court, in addition to a declaration of the invalidity of the toxicologist standards, Vargas–Aguila requests the issuance of a declaratory judgment that:

> Breath and blood alcohol test results obtained pursuant to the Regulations of the Toxicologist issued September 30, 2001, are inadmissible in evidence under Md.Code Ann., Cts. & Jud. Proc., §§ 10–304 and 10–306 [and] Convictions and sanctions imposed under §§ 16–205.1 and 21–902 of the Transportation Article are invalid to the extent predicated upon evidence of tests of breath and blood for alcohol obtained pursuant to invalid regulations of the State Toxicologist.

**8.** The State also filed an answer and a legal memorandum contending, among other things, that the General Assembly never intended the State toxicologist to promulgate formal regulations and that the toxicologist standards were exempt from APA rulemaking requirements as a statement that: "1) concerns only internal management of the unit; and 2) does not affect directly the rights of the public or procedures available to the public." SG Art., § 10–101(g)(2)(i). This memorandum also asked the circuit court to reconsider its denial of the State's motion to dismiss.

testing blood and breath alcohol levels and in the provision of training standards for staff who are authorized to operate the equipment; and it is further

DECLARED, that the General Assembly has neither required, nor prohibited, the State [t]oxicologist at the Office of the Chief Medical Examiner from promulgating regulations, pursuant to the Maryland Administrative Procedure[ ] Act, Md.Code Ann. State Gov't. Art. §§ 10–101, *et seq.* (APA) and Md.Code Ann. Health–Gen. Art. §§ 2–104 and 5–307, to facilitate the legislative deference to the exercise of professional judgment by the State Toxicologist; and it is further

DECLARED, that as of the date of the July 14, 2010 hearing on this matter, the State Toxicologist had not promulgated any such regulations in conformity with the APA.[9]

This appeal followed.

## QUESTIONS PRESENTED

Appellant has presented the following questions for review:

1.  Do the contents of the document, *"Regulations of the Toxicologist, Post Mortem Examiner[s] Commission, State of Maryland, Regarding Tests of Breath and Blood for Alcohol"* constitute regulations of the State [t]oxicologist that must be adopted in conformance with the State Administrative Procedure Act?

2.  Is the evidence of test of breath and blood for alcohol obtained pursuant to invalid regulations of the State [t]oxicologist inadmissible under Section 10–304 of the Courts and Judicial Proceedings Article?

3.  Are convictions and sanctions imposed under §§ 16–205.1 and 21–902 of the Transportation Article invalid if

---

9.  The last declaration relating to the promulgation of regulations has been superceded. The Secretary of Health and Mental Hygiene proposed the toxicologist standards as regulations under the APA on July 30, 2010; and these regulations were adopted on September 14, 2010. *See* 37 *Md. Reg.* 1394 (Sept. 24, 2010); and note 5, *supra.*

predicated upon evidence of tests of breath and blood for alcohol obtained pursuant to invalid regulations of the State [t]oxicologist?

The State has framed the issues in the following fashion:

1.  Did the circuit court correctly declare that the State [t]oxicologist, when adopting procedures for the use, maintenance and calibration of equipment for testing the alcohol content of breath and blood, and for the training of personnel who administer such tests, need not promulgate formal regulations pursuant to the Administrative Procedure Act?

2.  Should the circuit court have denied a request for a declaratory judgment addressing an issue that the plaintiff had raised in a pending criminal proceeding?

## DISCUSSION

■■■ Maryland's Declaratory Judgment Act, CJP §§ 3–401 through 3–415, is to be "liberally constructed," but "there are certain restrictions in its application." *Sprenger v. PSC,* 400 Md. 1, 24, 926 A.2d 238 (2007). "[T]he court will refuse a declaration where another court has jurisdiction of the issue, where a proceeding involving identical issues is already pending in another tribunal, where a special statutory remedy has been provided, or where another remedy will be more effective or appropriate under the circumstances. In these cases it is neither useful nor proper to issue the declaration." *Haynie v. Gold Bond Bldg. Products,* 306 Md. 644, 651, 511 A.2d 40 (1986). *See also* CJP § 3–409(b) ("If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle.").

■■■ Ordering declaratory relief "to decide an issue, even though the issue is presented in another pending case between the parties" is reserved for "very unusual and compelling circumstances." *Id.* at 652, 511 A.2d 40. These principles are applicable regardless of whether the pending case is a civil or criminal action, *id.;* or whether the pending action is in the

district court and the declaration is sought in the circuit court. *A.S. Abell Co. v. Sweeney,* 274 Md. 715, 719–21, 337 A.2d 77 (1975). In *Haynie,* the Court of Appeals found "no very unusual and compelling circumstances" when the circuit court could have simply decided the issue in the pending tort case. 306 Md. at 652, 511 A.2d 40.

In *Grimm v. Co. Comr's for Washington Co.,* 252 Md. 626, 250 A.2d 866 (1969), the Court of Appeals held that a declaratory judgment action was properly dismissed where the plaintiff sought to adjudicate issues presented for resolution in a pending criminal case. The Court in *Grimm* said that to rule otherwise "would be unfortunate as it would unduly burden the courts." *Id.* at 640–41, 250 A.2d 866.[10]

█ Vargas–Aguila's criminal trial in district court presented the same issues as the declaratory relief he sought in the circuit court. In fact, Vargas–Aguila's action in circuit court was a direct challenge to the evidence proposed by the State in the district court prosecution. Although the district court lacks the power to issue a declaratory judgment, it certainly would have been within its authority to determine the legal

10. Judge Moylan speaking for this Court in *In re Criminal Investigation No. 13 in the Circuit Court for Dorchester County,* 82 Md.App. 609, 573 A.2d 51 (1990), and relying on *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and other Supreme Court authorities, held that courts of equity were restrained from interfering with criminal prosecutions, particularly when the "propriety of the investigative procedure" could be tested at the criminal trial. 82 Md.App. at 613–14, 573 A.2d 51. The Supreme Court has extended the principles of *Younger v. Harris* to a declaratory judgment action filed after a state criminal prosecution has begun. *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), and even to one filed before, if no proceedings of substance have taken place in federal court. *Hicks v. Miranda,* 422 U.S. 332, 348–49, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). *See also Kowalski v. Tesmer,* 543 U.S. 125, 133, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) (Plaintiffs in declaratory and injunctive actions in federal court "had ongoing state criminal proceedings and ample avenues to raise their constitutional challenge in those proceedings") and 22A Am.Jur.2d *Declaratory Judgments* (2003) at § 57 ("A declaratory judgment will generally not be granted where its only effect would be to decide matters which properly should be decided in a criminal action").

question of the validity of the toxicologist standards.[11]  *See Howard v. State,* 76 Md.App. 447, 450–51, 545 A.2d 705 (1988) (The district court in a criminal case possessed "fundamental jurisdiction" to decide whether the adoption of an agency regulation violated the Maryland Constitution.)  Thus, there was no reason for Vargas–Aguila to seek declaratory relief in the circuit court.

Vargas–Aguila points us to no "compelling or unusual circumstances" which justify the use of a declaratory judgment action in this case.  *See Grimm,* 252 Md. at 639, 250 A.2d 866 (noting examples of exceptional circumstances to be "where the plaintiff alleges that he is subjected to a threat of continuing prosecution which will not be abated by the criminal proceeding or where there is a substantial threat of irreparable harm, or where for other reasons, the criminal proceeding will not adequately resolve all of the issues.").  Vargas–Aguila contends that because the Office of the Chief Medical Examiner cannot be joined as a party to a criminal case, it would have been impossible for the district court to make a ruling concerning the validity of the regulations.  We find this argument to be inaccurate and without merit.  Joinder of the Chief Medical Examiner was unnecessary for the district court to exercise its fundamental jurisdiction to pass on the validity of the toxicologist standards.  In our view, cases like *Haynie* and *Grimm* indicate that no competing or unusual circumstances exist where the plaintiff can raise the issue in the pending criminal proceeding.  *See Haynie,* 306 Md. at 652, 511 A.2d 40 and *Grimm,* 252 Md. at 633–34, 250 A.2d 866.

We cannot uphold a legal maneuver which allows a defendant to interrupt, delay, and possibly prejudice a criminal proceeding for the purpose of resolving an issue which could have been decided in and by the criminal court.[12]  Because the

---

**11.**  Even though the APA expressly authorizes a person to file a declaratory judgment action to challenge the validity of a regulation, SG § 10–125, nothing in this statute precludes a criminal defendant from asserting the alleged invalidity of a regulation in the criminal proceeding.

**12.**  A stay of the DUI process for more than two years could seriously impact the application of the recidivist and subsequent offender provi-

validity of the toxicologist standards could have been properly and adequately raised and decided in the criminal case, no declaratory judgment remedy in the circuit court was appropriate.

■ Our rejection of the circuit court's issuance of a declaratory judgment when a DUI proceeding is pending in the district court could also be sustained on an independent ground. CJP, § 3–409(b) provides that "[i]f a statute providing a special form of remedy for a special type of case, that statutory remedy shall be followed in lieu of a [declaratory judgment] proceeding." Such a special statutory remedy existed here.[13] The drunk driving offenses charged in the district court are statutory. *See* p. 2, *supra.* The district court by statute has "exclusive original jurisdiction" to try such a case, CJP § 4–301(a) and to provide a remedy of acquittal for these criminal charges. *See Broadwater v. State,* 401 Md. 175, 184, 931 A.2d 1098 (2007); and *Divver v. State,* 356 Md. 379, 382, 739 A.2d 71 (1999). Therefore, we conclude that the declaratory judgment action could have been properly dismissed on this ground.

■ Finally, a declaratory judgment should only be issued, "if it will serve to terminate the uncertainty or controversy giving rise to the proceeding." CJ § 3–409(a). Contrary to the requirements of the statute, Vargas–Aguila concedes that even if the declaratory judgment were issued in his favor, it would not necessarily terminate the controversy at issue, because he could be convicted on the basis of evidence other than the breath test. At trial in the circuit court, the judge, hesitant about issuing a declaratory judgment, raised the following concern to Vargas–Aguila's counsel, "under the circumstances of this case, I'm really waffling ... because I just don't see that it is, as a matter of judicial economy going to settle the case." The court's uneasiness was quite justified. For all of these reasons, we conclude that a declaratory

---

sions of the drunk driving laws.

**13.** A § 3–409(b) issue can be raised *sua sponte* by an appellate court. *Utilities, Inc. v. WSSC,* 362 Md. 37, 44, 763 A.2d 129 (2000).

judgment was not permitted here and it was improper for the district court to stay the criminal proceedings in order for such an action to be filed in the circuit court.[14]

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO DISMISS THE DECLARATORY JUDGMENT ACTION. COSTS TO BE PAID BY APPELLANT.**

---

**14.** In the district court, should the State continue to seek the introduction of the results of appellant's breath test, he is free to challenge the use of the toxicologist standards as violative of the APA and the State can raise those arguments it made below and those adopted by the circuit court. Also, possibly in play, would be the questions of 1) whether the toxicologist is or is not a "[u]nit of State government" under SG § 10–101(i) of the APA, because that position is not "an officer or unit authorized by law to adopt regulations;" 2) whether by conferring the duty to adopt the toxicologist standards on an employee, the Legislature did not intend those standards to be adopted by regulation under the APA; and 3) whether provisions of State law regarding the admissibility of the State toxicologist approval of testing equipment and the presence of the toxicologist in a criminal proceeding are inconsistent with a legislative intent to require this approval to be embodied in a regulation under the APA.