## SOLLINS, et ux. *v.* BALTIMORE COUNTY, MARYLAND

[No. 234, September Term, 1968.]

*Decided May 6, 1969.*

408

The cause was argued before HAMMOND, C. J., and MAR-
BURY, MCWILLIAMS, FINAN and SMITH, JJ.

*Benjamin Lipsitz,* with whom was *Eleanor J. Lipsitz* on the
brief, for appellants.

*Thomas J. Aversa, Jr.* and *Harry S. Shapiro, Assistant
County Solicitor,* with whom was *R. Bruce Alderman, County
Solicitor,* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Appellants filed a bill alleging that they owned land improved
by their dwelling on the northeast side of Seven Mile Lane be-
tween Smith Avenue and Midfield Road in Baltimore County,

that the County, pursuant to certain specified job orders and contracts, intends to widen Seven Mile Lane between Smith Avenue and Old Court Road, and that in the range between Smith Avenue and Midfield Road the plan is to acquire land for the widening entirely from the northeast side of Seven Mile Lane, leaving the land on the southwest side undisturbed. The bill alleged next that:

> "such taking and/or proposed taking of all of the land required for widening Seven Mile Lane solely from land lying on the northeast side thereof and, where Seven Mile Lane adjoins your orators' land, solely from your orators' land, without dividing the burden of such taking equitably between land on each side of Seven Mile Lane, is and will be and constitutes and will constitute arbitrary, capricious and illegal action by and on the part of Baltimore County * * *."

Appellants' bill prayed that the County be enjoined from acquiring or condemning any part of their land unless it takes the land needed for the widening "equitably from land lying on each side of Seven Mile Lane," and that the County be enjoined from improving or widening Seven Mile Lane at all unless it takes the needed land from both sides.

The County demurred on the grounds that complainants had an adequate remedy at law and that an injunction will not lie to control the exercise by administrative officials of delegated discretion, absent allegations of fact showing the exercise to be so arbitrary, unreasonable or oppressive as to suggest bad faith.

Judge Menchine sustained the County's demurrer without leave to amend on the ground that the appellants were premature in filing suit, there being no allegation that their lands have been taken or that condemnation proceedings have been instituted, and therefore no actual and justiciable controversy was present. We agree with Judge Menchine's action although we support it on somewhat different grounds.

It is apparent and conceded that Baltimore County has the power to condemn the land of the appellants for the widening of a road and it was established long ago that a court of equity will enjoin or interfere with a condemnation only if the proceed-

ings are void because the condemnor lacks constitutional or legal power to condemn the property in question. *Baltimore & H. de G. Turnpike Co. v. Union R.R. Co.,* 35 Md. 224; *Webster v. Susquehanna Pole Line Co.,* 112 Md. 416, 423-425.

It is equally well established that where the condemnor has power to condemn the land in question, equity will remit a litigant seeking its aid in preventing or controlling the condemnation processes to the court of law in which the condemnation case has been or will be filed. The rationale is that a special procedure and remedy exists in a court of law to effectuate and supervise the exercise of the power of eminent domain, and it is the court of law to which has been granted this special power and duty, that can and should decide all questions that are raised concerning the condemnation. See *Cumberland & Pennsylvania R.R. Co. v. Pennsylvania R.R. Co.,* 57 Md. 267, 274, citing *Western Maryland R.R. Co. v. Patterson,* 37 Md. 125, 135, 137; and *New Central Coal Co v. George's Creek Coal & Iron Co.,* 37 Md. 537, 565-566. In *Turnpike Road v. Railroad Co.,* 81 Md. 247, 257-258, the Court said:

> "It is held that where the law is constitutional, under which condemnation is sought, a Court of Equity has no power to arrest the proceedings by injunction; because a special tribunal is established for supervising the exercise of the right of eminent domain, to which alone the power has been granted to hear and determine all questions which can arise regarding the inquisition."

In accord are *St. James Church v. B. & O. R.R. Co.,* 114 Md. 442, 450, and *Riden v. Phila., B. & W. R.R. Co.,* 182 Md. 336, 346. Compare *Murphy v. State Roads Comm.,* 159 Md. 7, 19, which answers the appellants' argument that if Seven Mile Lane is widened up to and then beyond their property before their land is condemned, their claim that land should be taken from the other side of Seven Mile Lane as well as their side would be ineffective and futile in a subsequent condemnation case by saying:

> "If the [County] undertakes to build the proposed road

up to the appellants' lands, so long as it does not encroach thereon, it is within its rights, but it does so at its risk, and it can gain no rights against them by way of estoppel on the ground that they failed to object to the improvement."

Our sustaining of the chancellor's refusal to give the aid of equity to the appellants will not prevent them from asserting in a proceeding by the County to condemn their land that there is no necessity for the taking or that a taking only from one side of the Lane is corrupt within the meaning of the law or done in bad faith. Had equity had jurisdiction of appellants' case the allegations of the bill would not have been sufficient successfully to meet a demurrer. The crucial allegation that the taking of land of appellants only "without dividing the burden of such taking equitably between land on each side of Seven Mile Lane is and will be and constitute arbitrary, capricious and illegal action" by the County would not have been enough in equity and will not be enough if asserted as a defense in a condemnation proceeding, because the cases make it plain that the planning of roads and the selection of their locations and routes are solely for the administrative authority without judicial supervision unless the authority acts in bad faith or corruptly.

The Court in *Wash. San. Comm. v. Santorios,* 234 Md. 342, 345-346, put it in this wise:

"When the taking is challenged, the questions for the court to decide are limited to (i) whether there is any necessity whatever to justify the taking, or (ii) whether the decision of [the condemning body] is so oppressive, arbitrary or unreasonable as to suggest bad faith."

In *Masson v. Reindollar,* 193 Md. 683, 688-689, the Court said:

"It is a well established principle that where the action of an administrative agency is within the scope of its delegated authority, and does not affect the vested rights of liberty or property, the Court will not review its exercise of discretion unless its power was fraudulently or corruptly used. * * * we specifically hold that the Court will not control or review the exercise

of the discretionary power of the State Roads Commission, unless such exercise is fraudulent or such abuse of discretion as to amount to a breach of trust. Any other rule would have the effect of substituting the decisions of the courts for the discretion reposed in the Commission, and would disrupt the policies of the Commission, taking out of the hands of a single State agency the administration of their important functions and placing them in the hands of the courts."

The language just quoted was repeated in *State Roads Comm. v. Franklin,* 201 Md. 549, 561, after the Court had said:

"It might well be that the construction of this 'expressway' * * * will inflict hardships upon many individuals. That is a legislative problem, not judicial. Where the Legislature has conferred such powers on the Commission the question before the courts is limited to whether there is any necessity whatever to justify the taking, or whether the decision of the Commission is so oppressive, arbitrary or unreasonable as to suggest bad faith. *Murphy v. State Roads Commission,* 159 Md. 7, 15 * * *."

See also *Johnson v. Gas & Electric Co.,* 187 Md. 454, 461; *Ligon v. Potomac Elec. Pow. Co.,* 219 Md. 438; *State Roads Comm. v. Redmiles,* 176 Md. 677.

Whether the taking of land for the building or improvement of a road all from one side of the road alone could show bad faith or corruption on the part of a condemnor is not presently before us, but so many reasons suggest themselves as to why this reasonably and properly could be done in a given situation that it is not surprising that counsel for the appellants has cited no authority for appellants' contention to the contrary.

*Order affirmed, with costs.*