763 A.2d 129

## UTILITIES, INC. OF MARYLAND

v.

## WASHINGTON SUBURBAN SANITARY COMMISSION.

**No. 101, Sept. Term, 1998.**

Court of Appeals of Maryland.

Dec. 6, 2000.

38

John G. Roberts, Jr., (Steven P. Hollman, Steven A. Robins, Jeffrey D. Pariser, Hogan & Hartson, L.L.P., Washington, DC; William E. Sundstrom, P.A., Rose, Sundstrom & Bently, L.L.P., Tallahassee, FL, on brief), for Appellant.

**40**

Paul A. Tiburzi (Kurt J. Fischer, Marta D. Harting, Piper & Marbury, L.L.P., Baltimore, on brief; Nathan J. Greenbaum, Gen. Counsel; Robert H. Drummer, Associate Counsel, WSSC, Laurel, on brief), for Appellee.

Joseph J. Curran, Jr., Atty. Gen. of Md., Baltimore, Robert A. Zarnoch, Asst. Atty. Gen.,Annapolis, for the State of Md., Amicus Curiae.

Margaret Scott Izzo, Morgan, Lewis & Bockius, L.L.P., Washington, DC; Thomas P. Gadsden, Morgan, Lewis & Bockius, L.L.P., Philadelphia, PA, for National Ass'n of Water Companies, Amicus Curiae.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY,* CHASANOW,** RAKER, WILNER and CATHELL, JJ.

ELDRIDGE, Judge.

■ Maryland Code (1957, 1997 Repl.Vol.), Art. 29, § 3–107(a), provides that, in a condemnation action brought by the Washington Suburban Sanitary Commission ("the Commission") against a privately owned water or sewage system, the jury shall deduct from the compensation award any contribution that lot owners or home buyers have made toward the construction of the private utility. These contributions, known as "contributions in aid of construction," are a special kind of capital contributed by the developer of a new residential subdivision and passed through to the home buyer.[1]

■

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

1. Art. 29, § 3–107(a), states as follows:

" **§ 3–107. Same—Privately owned systems.**

(a) *Jury award in condemnation proceedings.*—If a privately owned water or sewerage system is the subject of a condemnation proceeding under Title 2 of this article, a jury in the proceeding shall:

With condemnation of its Prince George's County facility imminent, Utilities, Inc. of Maryland ("Utilities") brought an action for a declaratory judgment pursuant to Code (1974, 1998 Repl.Vol.), § 3–406 *et seq.* of the Courts and Judicial Proceedings Article, seeking a determination of the applicability of § 3–107(a) to the impending condemnation action, and, if applicable, a determination of the constitutionality of § 3–107(a). Utilities asserted that § 3–107(a) results in compensation that is less than fair market value in violation of Article III, § 40, of the Maryland Constitution, Article 24 of the Maryland Declaration of Rights, and the Fifth and Fourteenth Amendments to United States Constitution.[2] The Circuit

(1) Consider as a part of an award any payment, contribution, or tax paid by the respective lot owners or purchasers toward the construction of the systems; and

(2) If the system has been built in connection with and for the purpose of developing home sites, subdivisions, or villages by any person and the system has been offered as an inducement for the purchase of lots or land to be served by the system, deduct from the determined value of the plant or system a sum that the jury reasonably determines was added to the purchase price of the land or lots for the purpose of constructing the system."

2. Article III, §§ 40 and 40C of the Maryland Constitution provide as follows:

"**Section 40.  Eminent domain.**

"The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

\* \* \*

"**Section 40C.  Same—Acquisition of property in Prince George's County by Washington Suburban Sanitary Commission.**

"The General Assembly shall enact no law authorizing private property to be taken for public use without just compensation, to be agreed upon between the parties or awarded by a jury, being first paid or tendered to the party entitled to such compensation, except that where such property, located in Prince George's County in this State, is in the judgment of the Washington Suburban Sanitary Commission needed for water supply, sewerage and drainage systems to be extended or constructed by the said Commission, the General Assembly may provide that such property, except any building or buildings may be taken immediately upon payment therefor by the condemning authority to the owner or owners thereof or into the Court to the use of the person or persons entitled thereto, such amount as the condemning authority shall estimate to be the fair

Court issued a declaratory judgment, determining that § 3–107(a) was applicable and was constitutional. We shall vacate that judgment on the ground that Maryland law does not authorize a declaratory judgment action under the circumstances here.

## I.

Utilities is the owner of a private facility providing water and sewage service to the Marlboro Meadows Subdivision, an unincorporated community in Prince George's County, Maryland. The Commission, an agency of the State, *Katz v. Washington Sub. San. Comm'n*, 284 Md. 503, 509–512, 397 A.2d 1027, 1031–1032 (1979), created pursuant to Code (1957, 1997 Repl.Vol.), Art. 29, § 1–102 and § 1–201(a), is authorized to provide water and sewage service to most of Prince George's County and to Montgomery County, Maryland.

This case has its genesis in the Commission's public meeting held on July 30, 1997, at which the Commission voted in favor of filing a petition for condemnation of the Marlboro Meadows facility owned and operated by Utilities. The decision was made after several months of negotiations between the parties

value of said property, provided such legislation requires that the condemning authority's estimate be not less than the apprised value of the property being taken as evaluated by at least one qualified appraiser, whose qualifications have been accepted by a Court of Record of this State, and also requires the payment of any further sum that may subsequently be awarded by a jury, and provided such legislation limits the condemning authority's utilization of the acquisition procedures specified in this section to occasions where it has acquired or is acquiring by purchase or other procedures one-half or more of the several takings of land or interests in land necessary for any given water supply, sewerage or drainage extension or construction project."

Article 24 of the Maryland Declaration of Rights states:

"**Article 24. Due process.**

"That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

The Fifth Amendment provides in pertinent part as follows: "nor shall private property be taken for public use, without just compensation."

and their ultimate failure to reach an agreement on the fair market value of the facility. A major issue underlying the parties' disagreement was, and still is, whether the contributions in aid of construction of the facility constitute property of Utilities for which it is entitled to receive compensation in the condemnation proceeding.[3]

Anticipating the imminent condemnation action, Utilities, on August 29, 1997, filed this declaratory judgment action in the Circuit Court for Prince George's County, seeking a declaration that § 3–107(a) is unconstitutional, both on its face and as applied, because it requires the jury to consider contributions in aid of construction in determining just compensation and directs jurors to completely deduct the value of contributed property from the award, and, alternatively, that the statute by its own express terms is inapplicable to Commission condemnations which do not proceed under Title 2.[4]

On September 8, 1997, the Commission instituted formal condemnation proceedings of the Utilities system by filing a "Petition for Condemnation" in the Circuit Court for Prince George's County. The record indicates that the trial in the condemnation proceeding, Case No. CAL97–17811, was scheduled to begin on January 24, 2000, in the Circuit Court for Prince George's County. We have not been advised of any further proceedings in the condemnation case, and we presume that it is still pending in the Circuit Court.

In the present declaratory judgment action, both sides filed motions for summary judgment. After a hearing, the Circuit Court granted the Commission's motion for summary judgment, denied Utilities' motion for summary judgment, and issued a declaratory judgment that § 3–107(a) does, indeed,

---

3. The disputed contributions in aid of construction of the Utilities system total approximately $3.2 million.

4. Utilities argued that, even if the statute is constitutional, it does not apply under the present circumstances because the express language of § 3–107(a) limits its application to proceedings commenced under Title 2 "quick take" powers, and not to Title 1 general condemnation, which is the type of proceeding at issue here.

apply to the condemnation action against Utilities' property and that the statute violates neither the Maryland Constitution nor the United States Constitution. Utilities filed a motion for reconsideration which the Circuit Court denied, and thereafter Utilities took an appeal to the Court of Special Appeals. Before the case was heard by the Court of Special Appeals, this Court issued a writ of certiorari. *Utilities, Inc. of Maryland v. Washington Suburban Sanitary Commission*, 351 Md. 161, 717 A.2d 385 (1998).

## II.

The issues raised by the parties to this appeal concern the interpretation of Art. 29, § 3–107(a), and, if interpreted to be applicable to the Commission's condemnation action, the constitutionality of § 3–107(a). Neither side has raised any question concerning the propriety of the declaratory judgment action. Nevertheless, whether a case is or is not appropriate for a declaratory judgment is an issue which, on public policy grounds, this Court will ordinarily address *sua sponte*. *See, e.g., Waicker v. Colbert*, 347 Md. 108, 113–117, 699 A.2d 426, 428–430 (1997); *Harford Mutual v. Woodfin*, 344 Md. 399, 414, 687 A.2d 652, 659 (1997); *Ashton v. Brown*, 339 Md. 70, 86–87, 660 A.2d 447, 455 (1995); *Turnpike Farm v. Curran*, 316 Md. 47, 49, 557 A.2d 225, 226 (1989); *Haynie v. Gold Bond Bldg. Products*, 306 Md. 644, 649–654, 511 A.2d 40, 43–45 (1986).

As earlier indicated, we hold that Maryland law did not authorize the present declaratory judgment action. Instead, the statutory interpretation and constitutional issues, all relating to just compensation, must be resolved in the pending condemnation case.

Section 3–409(b) of the Declaratory Judgment Act, Code (1974, 1998 Repl.Vol.), § 3–409(b) of the Courts and Judicial Proceedings Article, states:

"(b) *Special form of remedy provided by statute.*—If a statute provides a special form of remedy for a specific type

of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."

It is well settled in Maryland that when there is a special statutory remedy for a specific type of case, and that remedy is intended to be exclusive or primary, a party "may not circumvent those [special statutory] proceedings by a declaratory judgment ... action...." *Montgomery County v. Broadcast Equities,* 360 Md. 438, 456–461, 758 A.2d 995, 1005–1008 (2000). *See, e.g., Josephson v. Annapolis,* 353 Md. 667, 674–681, 728 A.2d 690, 693–696 (1998); *Holiday v. Anne Arundel,* 349 Md. 190, 201–203, 707 A.2d 829, 834–836 (1998); *Zappone v. Liberty Life,* 349 Md. 45, 60–64, 706 A.2d 1060, 1067–1069 (1998), and cases there cited. Although most cases applying this principle have involved special statutory remedies for specific types of cases which initially begin with adjudicatory administrative proceedings, nevertheless, as shown by the broad language of § 3–409(b) of the Declaratory Judgment Act, the principle is equally applicable to special statutory remedies which begin with judicial proceedings. *See, e.g., Quinan v. Schneider,* 247 Md. 310, 231 A.2d 37 (1967); *Tanner v. McKeldin,* 202 Md. 569, 577–578, 97 A.2d 449, 452–453 (1953).

When a governmental agency entitled to exercise the power of eminent domain decides to acquire particular property in return for "just compensation," a statutorily authorized condemnation action is "a special form of remedy for a specific type of case." A judicial determination of "just compensation" should be made in the condemnation proceeding. Neither the governmental agency nor the property owner may select particular issues relating to just compensation and have them resolved in declaratory judgment actions. Under circumstances such as existed in this case, we believe that the General Assembly intended the condemnation proceeding to be the exclusive remedy.

The right of a Maryland governmental entity to utilize the power of eminent domain is limited by Article III, § 40, of the Maryland Constitution and the Fifth and Fourteenth Amend-

ments to the United States Constitution which require that the taking of private property be for public use and that just compensation be paid. *Green v. High Ridge*, 346 Md. 65, 72; 695 A.2d 125, 128–129 (1997). In addition, many statutory provisions applicable to eminent domain provide that there be a "necessity" for the taking. *Ibid.* The principal issues peculiar to a condemnation action are the government's right to condemn, public purpose, necessity, and the amount of compensation for the property owner. *See Bouton v. Potomac Edison Co.*, 288 Md. 305, 418 A.2d 1168 (1980).

■ As pointed out by this Court many years ago, "[t]he mode and manner of the exercise of the power of Eminent Domain is exclusively vested in the judgment and discretion of the Legislature...." *Ridgely v. Mayor and City Council of Baltimore*, 119 Md. 567, 574, 87 A. 909, 912 (1913). The only "mode and manner" provided by the General Assembly for the Commission to exercise the power of eminent domain are the condemnation proceedings authorized by Art. 29 of the Maryland Code.

■ Condemnation proceedings are peculiar civil actions and are often described as *sui generis, i.e.,* being the only one of its kind. *See* 6 Nichols on Eminent Domain, § 24.01(2), (3rd ed.1982). In Maryland, condemnation proceedings for the acquisition of private property for public use, while regarded as proceedings at law, are not ordinary suits at law. They are "special proceedings, lacking the characteristics of ordinary trials, brought pursuant to the power of eminent domain...." *Bouton v. Potomac Edison Co., supra,* 288 Md. at 309, 418 A.2d at 1170. *See Bryan v. State Roads Commission*, 356 Md. 4, 10, 736 A.2d 1057, 1060 (1999). The power of courts to try condemnation proceedings is not part of the common law jurisdiction of the judiciary. Rather, "[f]ew principles of law are more firmly established than the rule in the field of eminent domain that the court exercises a special statutory jurisdiction...." *Southern Maryland Elec. Co-op. v. Albrittain*, 256 Md. 39, 42, 259 A.2d 311, 313 (1969). In fact, a condemnation proceeding may be the quintessential "special

form of remedy for a specific type of case" under the exclusion contained in § 3–409(b) of the Declaratory Judgment Act.

An action for condemnation may be initiated only by those entities on whom the requisite authority has been conferred by the General Assembly. This Court stated in *Kenly v. Washington County R.R. Co.,* 129 Md. 1, 6, 98 A. 232, 234 (1916), that the condemnor "inaugurates the proceedings and it is the actor throughout," and that the "landowner is passive" until the condemning body takes action. Thus, a property owner cannot compel a condemnor to use the power of eminent domain to acquire private property. Condemnation, rather, is peculiarly a government prerogative. The condemning authority retains the right to abandon the proceedings up until the actual taking of the property or 120 days after the entry of judgment, unless an appeal is taken. *See* Code (1974, 1996 Repl.Vol.), § 12–109 of the Real Property Article and Maryland Rule 12–211. Allowing the property owner to maintain a declaratory judgment action before any condemnation action is filed, and to obtain a judicial resolution of a critical issue in the ascertainment of just compensation, cannot be reconciled with the proper role of the government and the property owner with regard to the power of eminent domain.

There are other inherent inconsistencies between condemnation actions and declaratory judgment actions which reinforce the conclusion that the Legislature did not intend that a declaratory judgment action could be substituted for a condemnation action. Under Articles 5 and 23 of the Maryland Declaration of Rights, the jury in a normal action at law, including a declaratory judgment action, is a common law jury with the attributes of a common law jury, except that it may be as small as six persons. Under Art. III, § 40, of the Maryland Constitution, however, the jury in a condemnation action may, but need not, be a common law jury. The General Assembly could authorize, and at times in the past has authorized, a sheriff's jury to determine just compensation in a condemnation action. For discussions of these differences, *see, e.g. Bryan v. State Roads Commission, supra,* 356 Md. at

9–13, 736 A.2d at 1060–1062; *Bouton v. Potomac Edison Co.,* *supra,* 288 Md. at 309, 418 A.2d at 1170; *Baltimore Belt Railroad Co. v. Baltzell,* 75 Md. 94, 106–108, 23 A. 74, 77 (1891).

Moreover, the role of the jury in a condemnation case is quite different from the role of a jury in all other actions at law. In normal actions at law, the jury ordinarily resolves factual disputes without regard to which element of the cause of action or defense the facts relate. In condemnation actions, however, the jury resolves factual disputes relating only to just compensation and fixes the amount of compensation. Issues relating to other possible elements, such as the right to condemn, public purpose, or necessity, are exclusively for the judge. *Bouton v. Potomac Edison Co., supra,* 288 Md. at 309, 418 A.2d at 1170–1171.

Furthermore, the judgment in "condemnations where private property is taken for public use, is not a judgment *in personam,* but it is a judgment against the property sought to be condemned. It is strictly a judgment *in rem.*" *Ridgely v. Mayor and City Council of Baltimore, supra,* 119 Md. at 577, 87 A. at 913. When the General Assembly in the Declaratory Judgment Act intended that an action under that Act could be brought in lieu of an *in rem* action, it expressly so provided. *See* Code (1974, 1998 Repl.Vol.), § 3–408.1 of the Courts and Judicial Proceedings Article, expressly authorizing a declaratory judgment action in land patent cases.

The case at bar illustrates another problem if declaratory judgment actions by the property owner, in anticipation of a future condemnation action, are allowable. The Washington Suburban Sanitary Commission has both regular condemnation authority and so-called "quick-take" condemnation authority under Article III, § 40C, of the Maryland Constitution. One of the contentions made by Utilities in this declaratory judgment proceeding, which was filed before any condemnation suit, is that Art. 29, § 3–107(a), applies only in a "quick take" condemnation action and not in a regular condemnation action. Until the condemning authority actually files the

condemnation case, however, there is no way of definitely knowing which type of condemnation proceeding will be instituted. The court in the declaratory judgment action may be rendering an advisory opinion on the statutory interpretation issue.

An important decision, relating to the issue of whether a condemnation action is the exclusive remedy under circumstances such as exist in the present case, is *Sollins v. Baltimore County,* 253 Md. 407, 252 A.2d 819 (1969), where a landowner sought to enjoin a county from taking his land to widen a public road. Affirming the circuit court judgment for the defendant-condemnor, Chief Judge Hammond for the Court stated that "it was established long ago that a court of equity will enjoin or interfere with a condemnation only if the proceedings are void because the condemnor lacks constitutional or legal power to condemn the property in question." *Sollins,* 253 Md. at 409–410, 252 A.2d 819, 820, *citing Baltimore & H. de G. Turnpike Co. v. Union R.R. Co.,* 35 Md. 224 (1872) and *Webster v. Susquehanna Pole Line Co.,* 112 Md. 416, 423–425, 76 A. 254, [256–257] (1910). Judge Hammond continued (253 Md. at 410, 252 A.2d at 820, emphasis added):

> "It is equally well established that where the condemnor has power to condemn the land in question, equity will remit a litigant seeking its aid in preventing or controlling the condemnation processes to the court of law in which the condemnation case has been or *will* be filed. The rationale is that a special procedure and remedy exist in a court of law to effectuate and supervise the exercise of the power of eminent domain, and it is the court of law to which has been granted this special power and duty, that can and should decide all questions that are raised concerning the condemnation."

*Sollins v. Baltimore County* underscores the principle that condemnation actions are exclusive special statutory actions for the exercise of the eminent domain power, and that issues inherent to condemnation cannot be taken out of a present or future condemnation case, in piecemeal fashion, and

litigated in separate judicial proceedings. Although the general constitutional or statutory authority of a government agency to condemn property may be challenged in an equitable proceeding, and thus alternatively by a declaratory judgment action under § 3–409(c) of the Courts and Judicial Proceedings Article, the issues inherent to condemnation proceedings, such as those relating to just compensation, are to be litigated in the condemnation case. *See Sollins v. Baltimore County, supra. See also Potomac Elec. Power Co. v. Birkett,* 217 Md. 476, 143 A.2d 485 (1958); *Perellis v. Mayor and City Council of Baltimore,* 190 Md. 86, 57 A.2d 341 (1948).

In sum, under circumstances such as those here, the condemnation action was the exclusive vehicle for judicial resolution of the issues relating to just compensation. The property owner's declaratory judgment suit was barred by § 3–409(b) of the Courts and Judicial Proceedings Article.[5]

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO DISMISS THE DECLARATORY JUDGMENT ACTION. EACH PARTY TO PAY ITS OWN COSTS.*

---

**5.** In light of our holding that the declaratory judgment suit was barred by § 3–409(b) of the Courts and Judicial Proceedings Article, we need not consider whether the suit was also precluded under the principle that a declaratory judgment action ordinarily will not lie when there is another pending action involving the parties and substantially the same issues. *See, e.g., Waicker v. Colbert,* 347 Md. 108, 699 A.2d 426 (1997); *Turnpike Farm v. Curran,* 316 Md. 47, 557 A.2d 225 (1989); *Haynie v. Gold Bond Bldg. Products,* 306 Md. 644, 511 A.2d 40 (1986); *Aetna Cas. & Sur. Co. v. Kuhl,* 296 Md. 446, 449 n. 1, 463 A.2d 822, 824–825 n. 1 (1983); *Brohawn v. Transamerica Insurance Company,* 276 Md. 396, 406, 347 A.2d 842, 849 (1975).